Iowa Loan & Trust Company v. Christina Haller, Henry Haller, A. S. Shockley, G. A. Shockley *et al.*, Appellants.

**Mortgages:** ASSUMPTION OF: RELEASE OF MORTGAGOR. An agreement by the grantee of mortgaged premises to pay the mortgage debt does not render the mortgagors mere sureties, so that a contract to extend the time of payment made with the grantee alone will release the mortgagor from personal liability to the mortgagee.

**Assumption of Mortgage:** EXTENSION: CONSIDERATION: FORECLOSURE. An agreement by a grantee of mortgaged premises that time of payment shall be extended is a good consideration for the assumption of the mortgage by such grantee, and such extension of the principal mortgage debt will not preclude a foreclosure for failure to pay interest and taxes, where the mortgage provides that upon such failure the whole indebtedness shall become due.

**Agreement to Assume and Extend Mortgage:** WHEN NOT EFFECTIVE. Where an agreement to become personally liable for the payment of a mortgage, and to extend the time, is made and delivered by a grantee of the mortgaged premises on certain conditions, which are never fulfilled, the same does not become effective.

*Appeal from Polk District Court.*—Hon. Charles Bishop, Judge.

Thursday, February 12, 1903.

ACTION to foreclose a mortgage.    There was a decree of foreclosure, and personal judgment in favor of plaintiff against the Hallers and the Shockleys, and they appeal.— *Modified* and *Affirmed*.

*J. A. Merritt* for appellants Shockley.

*Clark & McLaughlin* for appellants Haller.

*Dudley & Coffin* and *Witter & Blair* for appellee.

MCCLAIN, J.—The mortgage in question, which was executed by the Hallers on premises then owned by them, was extended by agreement of the parties thereto in 1894 for three years.    In 1895 the Hallers conveyed the premises to others, who assumed and agreed to 'pay the mortgage, and such other parties in 1897 secured a further renewal, the Hallers not having joined in the application therefor.    The owners of the premises succeeding to the Hallers ultimately conveyed to the Shockleys, and, at the time the last extension above referred to expired, there were further negotiations for extension between the Shockleys and plaintiff, the effect of which will be hereafter discussed.

I.    As to the defendants, the Hallers, the claim is made that the subsequent extension released them from personal liability, the contention of counsel being that 1. ASSUMPTION the grantee, taking from the Hallers, and of mortgage; agreeing to pay the mortgage, became the release of mortgagor. principal, while the Hallers thereupon became sureties only for the payment of the debt, and that the subsequent extension of time to the so-called principals released the liability of the Hallers as sureties.    Now, while it is true that, as between the Hallers and their grantee, the Hallers became only secondarily liable, yet as to the plaintiff the Hallers were not thereby released from primary liability.    It could only be by some new

agreement between the plaintiff and the Hallers that the liability of the latter to the former would be converted into a surety obligation.   No such agreement was made. The Hallers were not parties to the subsequent extension, and, so far as plaintiff is concerned, remained bound for the indebtedness as principals.   This question has been so fully considered in this state, and so definitely settled, that it is not necessary to do more than cite the following cases: *Corbett v. Waterman*, 11 Iowa, 87; *Massie v. Mann*, 17 Iowa, 131; *James v. Day*, 37 Iowa, 164; *Robertson v. Stuhlmiller*, 93 Iowa, 326.   Therefore, as to the plaintiff, the Hallers remained liable as principals for the mortgage indebtedness, notwithstanding the fact that, by the undertaking of the grantee with the Hallers to pay the mortgage indebtedness, the plaintiff also acquired a right to look to the latter, under the rule in this state, which is well settled and not questioned by counsel on either side, that the mortgagee may bring suit against the grantee of the mortgaged premises, who has agreed to pay the mortgage debt, and recover personal judgment against him therefor. In other words, the Hallers, on the one hand, and their grantee, on the other, were both personally liable for the payment of the indebtedness.   Under these circumstances, it is clear that an extension of time to the grantee, without any agreement with reference thereto with the Hallers would not discharge the Hallers from liability.   Where two or more persons are severally liable for a contract indebtedness, extension of time to one does not release another.

II.   When the Shockleys accepted the conveyance of the mortgaged premises from the remote grantee of the Hallers, they took subject to the mortgage, but did not 2. ASSUMPTION agree to pay the mortgage indebtedness; and of mortgage: extension: their personal liability is predicated on a consideration: foreclosure. written instrument subsequently executed by them, in which such personal liability purported to be

assumed in consideration of further extension of time. If that had been the whole agreement, and it had been fully entered into by both parties, there would have been a good consideration therefor, so far as the Shockleys were concerned, consisting in the extension of time; and it would be no answer that before the expiration of the extension agreed upon, which related to the principal, only, of the mortgage indebtedness, the plaintiff brought action on account of default in the payment of interest and taxes, which default, by the terms of the mortgage, would render the whole indebtedness due. In other words, the Shockleys would have acquired the right by this agreement to an extension of time as to the principal, provided they paid interest and taxes as they should fall due. Therefore the contention of counsel for the Shockleys that there was no consideration for the extension is unfounded, notwithstanding the result that action was brought on account of default in payment of interest and taxes before the termination of the period of extension as to the principal.

But the Shockleys testified (and they are, to some extent, corroborated by another witness) that the instrument signed by them, purporting to be a contract for ex- 3. AGREEMENT tension of time and an agreement to assume to assume and extend mort- personal liability, was delivered on the con- gage: when not effective. dition that it would take effect only when signed by the plaintiff and upon payment by a third party to whom the premises were to be further conveyed, of the delinquent taxes and interest; and it is argued that as the plaintiff never signed the agreement for extension, and the condition as to payment by the third party of the taxes and interest was never complied with, the contract itself was never operative, and therefore no personal liability on the part of the Shockleys ever accrued. This is purely a question of fact, to be determined under the evidence. The instrument purported to be a mutual

agreement between the Shockleys and the plaintiff, blanks being left for the signatures of each; and, while a unilateral written contract signed by one party may be so accepted by the other as to become a binding contract without the signature of the latter, yet, where a contract purports to be a mutual one, it is not, in general, binding on either until signed by both, and we think the evidence sufficiently shows that this was the understanding of the parties.

We think it also sufficiently appears from the evidence that the delivery of the instrument was conditional not only on its being signed by the plaintiff, but also on the payment of the interest and taxes by the third party, to whom it was intended that the premises should be conveyed. No such payment was made, and therefore, the condition on which the contract was to become effectual not having been complied with, it was of no force. The testimony of the president of the plaintiff company would support the contention of plaintiff that the Shockleys became bound personally by the delivery of the writing, and became entitled to the extension of time as to the principal of the indebtedness, but this witness may very well have been mistaken as to exactly what was said by the Shockleys with reference to the terms and conditions on which the contract was delivered. We think the weight of the evidence is in support of the contention of the Shockleys as to this matter, and therefore reach the conclusion that the written agreement by which, if fully executed and unconditionally delivered, they would become personally liable for the indebtedness, never took effect.

Our conclusion is that the decree is correct so far as it provides for a foreclosure of the mortgage and a personal judgment against the Hallers, but it is reversed so far as it provides for personal judgment against the Shockleys.— MODIFIED and AFFIRMED.